Our fifth case for this afternoon, for today, is Abdollahzadeh against the Mandarich Law Group. Is Mr. Casalo in the courtroom? Yes, Mr. Casalo. May it please the Court, Mario Casalo on behalf of Plaintiff Mehdi Abdollahzadeh. Your Honors, the Court should reverse the District Court's granting of summary judgment to defendant and the denial of summary judgment to the plaintiff for five reasons. As an initial matter, the District Court erred on the standard to be applied on the level of attorney review required by attorney debt collectors. Two, the defendant did not have procedures that were regularly ordered to prevent the violation asserted. Three, there's a question as to what the policies even were, because defendant's policy is conflicted. Four, defendant's reliance on selective information while ignoring other information presented by its client was not reasonable. And five, questions exist as to whether the violation was a result of good faith error. So can I say, I mean, their system seems to have been a fairly simple one, but it looks like they take the data from these people from whom they buy the debt. They look to see what's the recorded last payment date. Their system runs a check to see if that's more than five years ago. If it is, then it's understood to be out of statute of limitations, can't go forward. If it's not, they move ahead. It's a pretty simple, I mean, I hate to say that I could write that program, but it's a pretty simple computer program. I did actually take a course in this once. And true, their system doesn't dig into the details of that last payment date. Was the check bounced? Was it the right amount? Was it whatever else might be questions about it? But I've certainly seen worse debt collection. But they do seem to have a system in place that's designed to catch out of statute of limitations debts. And is it perfect? No, but they say the bona fide error is an error in fact, which is that this later date, the 2011, the June 30, 2011 date, they thought was a valid last payment, but, in fact, it turns out it was earlier. By the time this all comes up, they're in the middle of litigation in the state court. So they go through the process, and the state court judge rules in your client's favor, and that's that. But I think what the district judge was trying to say is that this system of checking last payment date against the time clock for the statute of limitations is a system for ensuring that out of statute claims aren't done. And I think at one point Judge Shaw says it doesn't have to be perfect, that the level of verification that you're asking for isn't required by the statute. So what's wrong with that as a way of approaching this? Well, it's not plaintiff's position that there's any verification required by attorney debt collectors. It's our position that there has to be. But these people are apparently doing it, though. They're comparing last payment date with date minus five years. And if there's been a six-year time span, then apparently they don't try to collect the debt. The problem for a defendant is that the procedures have to be adapted to prevent the violation asserted. They somehow have to prevent the filing of stale claims. And why don't these procedures in a lot of cases, surely these procedures do exactly that? Not in this case. In this case, defendant's procedures will never catch a bad date of last payment because there's only blind reliance on that date of last payment, and there's a disregard of other contrary information provided at the same time by the client. Specifically, at the same time a date of last payment was provided, the defendant also received a charge-off date, an amount, and a placement amount. That charge-off date, charge-off amount I should say, was $16,700, and I'm rounding. The placement amount was also $16,700. Yet defendant is relying on a payment made in between, which would have reduced the placement amount by the amount of the payment. And the district judge acknowledges that that could happen, that he thought, maybe you think he's just being unrealistic, he thought there could be other reasons why that identity of numbers wound up being there. Those reasons would be speculative. There's nothing in the record to support that any reasonable inference can be made that, for example, and the defendant gives an example, I believe, that the creditor continued to charge interest. That's just nonsensical because according to Schedule I, clearly no interest. It says on Schedule I there's no interest to be imposed. There was a charge-off date, and then there was a sale date, which was a year or two afterwards, and no interest was imposed between the charge-off date and the sale date. The amounts were the same. From the sale date to the placement date, the amounts were the same. There's no evidence whatsoever in the record to support that interest could have been imposed. The exception doesn't require the kind of degree of perfection that you seem to be demanding. It just requires regular, orderly procedures to be in place, not that they're going to succeed every time. And it seems to me when the issue is when the statute has run making the debt uncollectible, a simple procedure, checking for date of last payment and then doing the calculation that Chief Judge Wood suggested, date minus five years, is a regular, orderly procedure that will catch all mine run out-of-statute cases. And there may be specific cases that fall through the cracks. This is one of them because one of the payments didn't clear. And that doesn't mean that the defense isn't applicable. It just means that the procedures, which were otherwise regular and orderly, failed to catch this mistake. And this is the bonafide mistake. It seems a clear case of falling in the exception. I think reference to a scrub without explaining what a scrub is or identifying any steps involved in a scrub is not what this Court said in Lee v. Nationwide would constitute a reasonable procedure. That is, it's thinly specified. It bars certain conduct, that is, the collection of out-of-statute debts, without saying how. Moreover, it's not reasonably adapted because the client, the agreement between the client and the defendant, disclaims the accuracy of the information provided. So let me ask you this. Do you happen to know, this might just be impossible, but how often attempted payments bounce? Or there's an apparent payment, as there was here, but there are insufficient funds. Is this a common event? We don't know because the policies would never catch that. The policies would never, ever catch, according to the policies implemented, they would never catch a wrong date of last payment. Well, this collector's policy, but I'm wondering in general, maybe somebody. In other words, you seem to think there's a better policy out there that somebody could have. And, of course, as I was reading these briefs, I was thinking, sure, you could have an in-depth examination of every file, but this is an industry, like every industry, that's balancing costs and benefits. And I guess by checking every night to make sure that they've deleted all the plus five-year debts, they're doing something. They're not doing as much as is possible. I understand if you or I were to sit down every night with the whole portfolio, maybe we'd find more, but I don't know. Well, I think the case of McCullough, the 930 case, is instructive here because the facts are really pretty similar. We have a disclaimer of the accuracy of the information of McCullough, just as we have in this case. The retainer language is almost identical. Plus, in that case, the defendant had information in its possession contrary to the date of last payment. In other words, information that had to be considered would raise a red flag. That's what we have here. This wasn't a difficult calculation. Now, I think this court in Avala said that an attorney debt collector has to make a considered professional judgment that a debtor is a client. I'm sorry, that a debtor is a candidate for legal action. Avala is still good law. Now, Webster defines considered as matured by extended deliberative thought. The court's standard is, and I'm reading it off, it is likely that MLG would have discovered the error if it had independently reviewed the account's information. If it had reviewed it. Of course, according to Avala, there's a duty to at least review what you have. But, by design, the defendant ignores contrary information. The only policy is to look at one data point. If that data point is wrong, garbage in, garbage out. You will always file a stale claim. It will never catch a wrong date of last payment. And that goes against what is required. There has to be policies reasonably adapted to prevent the violation. This policy will never, ever, ever prevent the violation asserted. Which is, excuse me, the filing of a stale claim here. Okay, I'm going to have to ask you to stop now. I'll give you a minute to rebut afterwards. Thank you, Your Honor. Thank you. Ms. Olson. May it please the Court. The mistake which occurred in this case is the precise type of factual or clerical mistake that the bona fide AR defense was designed to prevent. Despite extensive procedures, in my opinion, designed to prevent collection activity on stale claims, Mandritch unintentionally initiated collection activity on a stale claim. Does the record reveal what a scrub is, what you do? Your opponent says that this is just some undefined term out there. With respect to the scrub? Yeah. I would say that the written policies do not directly set forth exactly how the scrub works. I believe the language that is used is that it's by systematic automation that the scrub is performed using the last payment date that appears in Schedule 1 in the account information report. So you might buy a debt on day one and not be doing anything with it, and after day 45, every night, now it's five years out. And so you would delete it from the system then? You're checking every night as they age out? The scrub is automatically checking every single night as part of the system. And then it kicks out the ones that are too old? Yes, they're canceled. In addition to that scrub, also, when accounts are nearing the statute of limitations, they are presented to attorneys at Mandritch to review, to consider whether or not a lawsuit should be filed. And if no legal action is going to be taken at that time, those accounts are also canceled and returned to the client. In addition, the clients review every account prior to filing suit to confirm that maybe, just in case the scrub didn't kick it out, they confirm that it is still within the statute by reviewing Schedule 1 in the account information report. So you're saying, though, that as the attorney reviews this account, it just makes me wonder how discerning a review it is, because there is this erroneous date of last payment that we now know. What they see is date of last payment, June 30, 2011. But then they see that this charge-off amount and the other amounts are all the same and nothing happens. So the supposed 1,600-and-some payment turns out to be a zero. So why doesn't somebody say simple arithmetic isn't adding up here? I think, Your Honor, it's because there are different reasonable inferences that could be drawn from the unchanged balance. Some of the examples, well, counsel did point out one, that the creditor could have continued to charge interest, obviously. But interest really? I mean, if you think of what the numbers are going to be. Another example, Your Honor. Perhaps a debit adjustment was made after the charge-off date to add a missing transaction. Alternatively, it could have been that after the charge-off date, there was a bounced payment, which then the plaintiff later made up by the exact same amount, which could have potentially been a possibility. That being said, Your Honor. Why wouldn't that show up just as a later payment, though? I'm sorry? If there was a bounced payment, let's say, on June 30th, and let's say the person thinks, oh, I really meant to make a payment, so on July 16th they make a payment, then it seems like the last payment date would be July 16th, not June 30th, making up for the bounced payment. I guess I'm confused, Your Honor, by what you're referring to as the July. Well, it's a hypothetical. In this instance, there's a June 30 effort to pay, but it doesn't clear insufficient funds. I'm saying hypothetically, to take your example, if Mr. Abdulzadeh later says, oh, I really meant to make that payment, so on July 16th he tenders the 1640 again, then July 16th would be the last payment date. It wouldn't relate back to the ineffectual June 30 date. If that, in fact, occurred, yes, whatever the next payment date that he had attended. So I'm just saying your hypothetical doesn't answer the question, how could you have all these numbers the same? I think it is, if I make it more specific, the charge-off date was March 31st, 2011. Assume that after that date the creditor realized that the last payment on the payment, and so after March 31st, the account was actually adjusted. So the charge-off balance would still have been the same before and at the time of purchase. But after they adjusted the account, reduced it by $1,670.96, and then on June 30th, 2011, the last payment date, he supplied that payment. So then all of the information would be as it was presented. The charge-off balance would have been the same on both dates, and the last payment that was tendered, which made up for the balance payment, would have been the last payment date, and it, in fact, would have cleared. So I do believe that different inferences could have been found, and more importantly in this case. It seems like you're stretching it, though. I mean, I suppose with enough imagination. So you're hypothesizing activity between the date when the account is charged off and the last payment date. Exactly, Your Honor. Debit adjustments can occur after the charge-off date. It's entirely possible. And counsel never introduced any evidence in this case as to what a creditor's rights attorney might necessarily conclude from the unchanged balance on the two dates. And the record was clear that to this creditor rights attorney, it was not a red flag. So that being the evidence in the record, I don't think that the district court was in error finding that the bona fide error defense applied. Is this rare? I'm sorry? Is this rare to have this balanced payment problem? I'm thinking if it were a common thing, presumably your scrub program would also have some code in it that would look to see if the amounts were the same because you would catch balanced payments. So I'm wondering why it doesn't have that. So I'm just wondering, is this kind of a rare thing? You know, this is something that I might advise the client in the future, having come across it. But what the testimony from the 30B6 representative showed was that in his nine years of representing CACH, not once did he ever come across this problem. Now counsel wants to make it seem that because the system is not designed to catch it, as you're stating, that the scrub is not designed to match the two numbers and see if there's an issue, it does come up when they start suing consumers or when they send a validation letter to the consumer. The consumer calls and says, No, this debt is outside the statute, you shouldn't be collecting it. In this case, that validation letter went out and they never heard from the plaintiff. In fact, and I understand that this doesn't necessarily go to what they knew at the time of the challenge collection activity, but the plaintiff even called after the collection lawsuit was filed and mentioned that he made a payment in that amount that settled the account. So even then, the client had no reason to believe that this was a bounced payment. And when they first became, I guess, unnoticed that this might be a problem, they still had to conduct an independent investigation into the issue by contacting their original creditor and getting additional information and documentation. So as I understand it, and as the circuit has repeatedly held, the FDCPA does not require debt collectors to independently verify or investigate the account information as tendered to them by the client at the outset. In this case, there was no obvious red flags at the outset, and I understand your position, Your Honor, and counsel's, that perhaps this unchanged balance was a red flag, but as I stated, it was not a red flag to this attorney. Here, considering the strict regulations that national banks, including the original creditor in this case, were required to follow, along with CACH's training with those banks, CACH's interest in complying with the FDCPA, and Mandridge's prior experience collecting these accounts, including the nine years that I referenced of this attorney never having this issue, Mandridge had no reason to believe at the time it conducted this activity that the information tendered to it was not accurate. I'd point out that counsel also continues to misconstrue the record when he says that CACH disclaimed the accuracy of the data. By definition, disclaim means to reject or deny, and that's not what happened here. CACH merely refrained from accepting liability should the information end up being inaccurate. I don't think that is surprising or unreasonable in any way, given that they're not the originator of this data. To hold otherwise would require debt purchasers such as CACH to independently verify each and every entry on an account information report that they received from original creditors. That's completely unsustainable and untenable. Also, I'd point out that McCulloch, that counsel so heavily relies on, is distinguishable in many ways. In that instance, there was no other reasonable inference that could be drawn, and there was already mention in the record that the plaintiff had raised a statute of limitations issue, and also counsel themselves raised the issue with their client and just agreed with the client's unverified statement that it was within the statute. I think that should do it.  Thank you, Your Honor. Anything further, Mr. Casale? Your Honor asked whether or not this occurrence is rare, and the point that I was trying to make is we don't know because it will never be caught according to defendant's policies. As I said, garbage in, garbage out. The date of last payment will never be identified as being a false date because defendant doesn't consider any other information in its analysis other than blind reliance on the date of last payment. Consideration of the charge off amount of the placement amount is not a burdensome policy. That by itself allowed me to, within minutes, identify that this is problematic, this is a red flag. I think it should be something obvious to a debt collector as well. Referring back to Avala, language in Avala is a considered professional judgment. A considered professional judgment cannot be made when information that is readily available is ignored by design, by a matter of policy, because the only policy, only on written policy, because there are no written policies, is to rely on the date of last payment. I have a couple more points. With respect to counsel's statement that I'm using the word disclaimer incorrectly, this is not my word, this is McCullough's word, given almost exactly the same provision in the retainer. That is, the client does not warrant the accuracy, validity, or correctness of the information provided. So in that case, the court found, and used the word disclaimer, this is not a word that I've originated. A couple more points. With respect to whether or not the defendant intended to violate, we've been talking about policies a lot, but at the very least, there are genuine issues of material fact as to whether the defendant intended to violate the act. And that is because at all times in the state case, defendant took the position that it was timely. Plaintiff's counsel emailed, defense counsel said, your claim is stale, your claim is old. I think you need to wrap up now. So a final thought is fine. Okay. The final thought, Your Honor, is even defendant's own policies contradict each other. Specifically, there's a policy where the defendant is supposed to dismiss all litigation, pending or planned, and there's also a concurrent policy that defendant only dismisses non-pending litigation. The policies themselves don't mesh together, therefore there really isn't a policy reasonably adapted to prevent the violations. Okay. Well, thank you very much. Thank you, Your Honor. Thanks to both counsel. We'll take the case under advisement.